**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TRACY ANN KEILLOR,**

      **Plaintiff,**                      Civil Action No. 18-cv-10015

      v.                                District Judge Avern Cohn

**COMMISSIONER OF**                 Magistrate Judge Mona K. Majzoub
**SOCIAL SECURITY,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Tracy Ann Keillor seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that she is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 21) and Defendant's Motion for Summary Judgment (docket no. 23). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 4.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 21) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 23) be **GRANTED**, and that the case dismissed in its entirety.

## II.     PROCEDURAL HISTORY

On January 5, 2011, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging that she became disabled on December 28, 2010. (TR 510.) On March 5, 2012, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge ("ALJ") Jerome Blum. (*Id.*) On March 29, 2012, ALJ Blum issued an unfavorable decision on Plaintiff's claims. (*Id.*) Plaintiff requested a review of the ALJ's decision with the Appeals Council, and on June 4, 2013, the Appeals Council issued an order of remand. (*Id.*) On September 25, 2013, Plaintiff appeared and testified at a second hearing before ALJ Blum. (*Id.*) During this hearing, Plaintiff amended her alleged onset date to November 18, 2011. (*Id.*) On November 22, 2013, ALJ Blum issued another unfavorable decision. (*Id.*) After the Appeals Council denied review, Plaintiff appealed the decision to this Court. (Case no. 15-cv-11762.)

Before this Court resolved that matter, Plaintiff filed a second DIB application dated March 18, 2015, alleging that she became disabled on December 1, 2013. (TR 510.)

On September 9, 2016, this Court remanded Plaintiff's first case for a proper assessment of the opinion of consultative examiner Dr. Fariha Qadir. (Case no. 15-cv-11762.) The Appeals Council then directed ALJ Virginia Herring to consolidate Plaintiff's applications, create a single record, and issue a decision on the consolidated claims. (TR 510.)

On October 14, 2016, Plaintiff appeared for a hearing before ALJ Herring. (*Id.*) On January 13, 2017, ALJ Herring issued an unfavorable decision. (TR 510–24.) Plaintiff appealed the decision, and the Appeals Council denied review on February 11, 2015. (TR 798–99.) On January 2, 2018, Plaintiff commenced this action for judicial review. (Docket no. 1.) The parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 21; docket no. 23.)

**III.     HEARING TESTIMONY AND MEDICAL EVIDENCE**

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of her medical issues.  (Docket no. 21, pp. 2–9.)  In addition, the ALJ summarized Plaintiff's medical record (TR 513–522.)  Defendant adopted the ALJ's recitation of the facts, but separately summarized various aspects of the ALJ's decision.  (Docket no. 23, pp. 4–5.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

**IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ determined that Plaintiff met the insured-status requirements of the Social Security Act through December 31, 2015, and that she had not engaged in substantial gainful activity since November 18, 2011, the amended alleged onset date.  (TR 513.)  The ALJ found that Plaintiff had the following severe impairments: "generalized anxiety disorder; major depressive disorder; bipolar I disorder; and dysthymic disorder."  (*Id*.)  Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (TR 514.)

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations:

- Plaintiff cannot operate a motor vehicle;
- Plaintiff is limited to simple, routine tasks and making simple work-related decisions;

- Plaintiff cannot work at a production rate pace, meaning where an external source, like an assembly line or conveyor belt, set the production rate;

- Plaintiff cannot interact with the public or engage in tandem tasks with co-workers;

- Plaintiff is limited to occasional and superficial interaction with co-workers and supervisors.

(TR 515.) Based on this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC could perform the requirements of jobs that exist in significant numbers in the national economy, including cleaner, hand packager, collator, and addresser. (TR 523–24.) Accordingly, the ALJ concluded that Plaintiff was not disabled from November 18, 2011 through the date last insured. (TR 524.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524,

536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by

5

substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.     Analysis**

Plaintiff raises five objections to the ALJ's decision. (Docket no. 21.) First, Plaintiff contends that her impairments meet or medically equal Listings 12.04 and 12.06. (*Id*. at 9–15.) Second, Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence. (*Id.* at 15–18.) Third, Plaintiff argues that the ALJ erred in evaluating three medical opinions. (*Id.* at 18–23.) Fourth, Plaintiff submits that the ALJ improperly discredited her husband's testimony. (*Id.* at 24–25.) Finally, Plaintiff asserts that the ALJ improperly analyzed Plaintiff's subjective symptoms. (*Id.* at 25–27.)

*1.  Listings 12.04 and 12.06*

Plaintiff contends that her impairments meet or medically equal Listings 12.04 and 12.06. (Docket no. 21, p. 9.) While Plaintiff makes a perfunctory attempt to contradict the ALJ's substantive findings, she primarily contends that the ALJ "made a medical equivalency argument without expert opinion." (*Id.*)

The circuitous path of this argument tracks the lengthy procedural history of this matter. After the November 22, 2013 decision, Plaintiff objected that ALJ Blum improperly relied on a state-agency medical opinion that pre-dated her alleged onset date and thus "lacked a medical opinion at step three." (*Id.* at 9.) This Court remanded Plaintiff's claims on other grounds and did not address that argument. (Case no. 15-cv-11762.) In the present case, Plaintiff asserts that the

6

state-agency medical expert who reviewed her 2015 application merely "acquiesced" to ALJ Blum's 2013 ruling, and therefore relied on the state-agency opinion adopted in the 2013 ruling, which as noted above pre-dated the alleged onset date. (Docket no. 21, p. 10.) Accordingly, Plaintiff contends that ALJ Herring made a medical equivalency determination without a supporting medical opinion. (*Id.* at 10–15.)

Review of the record does not support Plaintiff's argument. On June 15, 2015, state-agency medical expert Dr. James Tripp assessed Plaintiff's Medically Determinable Impairments ("MDI") and Plaintiff's RFC. (TR 808–812.) Dr. Tripp adopted ALJ Blum's 2013 decision regarding Plaintiff's RFC, noting that there was "no new and material evidence in [Plaintiff's] file." (TR 812.) In reaching this conclusion, Dr. Tripp cited the Social Security Commission's Acquiescence Rulings 98-3(6) and 98-4(6) regarding the effect of a prior finding on the adjudication of a subsequent disability claim. (TR 814.) However, as to the Plaintiff's MDI, Dr. Tripp undertook an independent assessment, and did not rely on ALJ Blum's 2013 determination. (TR 809.) This is evident from the fact that ALJ Blum found that Plaintiff had moderate difficulties in social functioning and Dr. Tripp determined that Plaintiff had only mild difficulties in that area. (TR 36; TR 809.) After conducting this independent review, Dr. Tripp concluded that Plaintiff did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (TR 809.)

As to the substance of ALJ Herring's Listing analysis, Plaintiff contends that "there is substantial evidence to support that Plaintiff meets or medically equals Listing 12.04 or 12.06." (Docket no. 21, p. 10.) However, the question on review is whether substantial evidence supports the ALJ's determination that Plaintiff did not meet or medically equal those Listings. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999). For the reasons set forth more fully below,

7

substantial evidence supports the ALJ's determination that Plaintiff had mild restrictions in activities of daily living, and moderate difficulties in social function and maintaining concentration, persistence or pace. (TR 514.) Moreover, substantial evidence supports the ALJ's determination that Plaintiff had no episodes of decompensation for extended duration. (TR 515.) Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or medically equal Listing 12.04 or 12.06.

> 2. *RFC*

Plaintiff contends that ALJ Herring's RFC determination is not supported by substantial evidence. (Docket no. 21, pp. 15–18.) As noted above, the ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations:

- Plaintiff cannot operate a motor vehicle;
- Plaintiff is limited to simple, routine tasks and making simple work-related decisions;
- Plaintiff cannot work at a production rate pace, meaning where an external source, like an assembly line or conveyor belt, set the production rate;
- Plaintiff cannot interact with the public or engage in tandem tasks with co-workers;
- Plaintiff is limited to occasional and superficial interaction with co-workers and supervisors.

(TR 515.)

In reaching this determination, the ALJ observed that between November of 2011 and August of 2013, Plaintiff "complained of depression, irritability, sleep disturbance, mood swings, paranoia, racing thoughts, and decreased energy and motivation" which intensified when Plaintiff "faced increased familial or environmental stress, such as dealing with the holidays, death of a friend, etc." (TR 516.) However, these symptoms "responded positively to medications," and

Plaintiff's condition stabilized beginning in August of 2013. (TR 516–17.) As the ALJ notes, Plaintiff attended therapy sessions with Ms. Lisa Schmidt, whose treatment notes from August of 2013 through January of 2015 reflect that Plaintiff "continued to report symptom fluctuation, but admitted that overall she was doing very well" and "was able to recognize when her [symptoms] were worsening and could successfully work through them." (TR 517.) The ALJ emphasized that during this timeframe, "[o]ther than occasionally exhibiting an anxious affect, [Plaintiff] demonstrated unremarkable mental status examinations, i.e., logical thought process, good eye contact, normal behavior, normal sensorium and cognition, and intact memory, attention and concentration." (*Id.*)

In addition, the ALJ observed that Plaintiff treated at Eastwood Clinic from March of 2015 through November of that year. Plaintiff's records from Eastwood demonstrated that Plaintiff "made some progress and started to get symptom relief," including "decreased mood swings and anger" and "increased ability to cope with stress effectively." (*Id.*)

Review of Plaintiff's medical records confirms all material aspects of the ALJ's summary. Accordingly, substantial evidence supports the ALJ's RFC determination.

### 3. *Medical Opinions*

Plaintiff argues that the ALJ improperly weighed the opinion evidence of Dr. Charles Heth, Dr. Fariha Qadir, and Nurse Practitioner Lisa Schmidt. (Docket no. 21, pp. 19–23.)

#### a. Nurse Practitioner Schmidt

Ms. Schmidt offered two opinions: one in November of 2011 and one in September of 2016. In the 2011 questionnaire, Ms. Schmidt opined that Plaintiff was "unable to meet competitive standards" in the categories of maintaining attention for two-hour segments, maintaining regular attendance, sustaining an ordinary routine, completing a normal workday or

9

workweek without interruption from her symptoms, responding appropriately to changes in work setting, and getting along with co-workers. (TR 344.) In her 2016 opinion, Ms. Schmidt concluded that Plaintiff had "no useful ability to function" in any of the twenty-five surveyed categories. (TR 1217–18.)

The ALJ noted that "as a nurse practitioner, Ms. Schmidt is not an acceptable medical source." (TR 519.) Nevertheless, the ALJ gave partial weight to Ms. Schmidt's opinions. (*Id.*) In discrediting some aspects of Ms. Schmidt's opinions, the ALJ emphasized that the 2011 opinion was issued on the alleged onset date, and thus did not "offer much insight into [Plaintiff's] level of functioning, efficacy of medications, etc., from November 2011 through the date last insured." (*Id.*) In addition, the ALJ noted that the 2016 opinion was issued after the date last insured and was inconsistent with the record. (*Id.*)

Substantial evidence supports the ALJ's determination to give only partial weight to Ms. Schmidt's opinions. As the ALJ observed, Plaintiff's mental impairments showed improvement from August of 2013 through January of 2015. (TR 517.) And indeed, Ms. Schmidt's treatment notes from this period are substantially inconsistent with her opinions regarding Plaintiff's RFC. These records demonstrate that Plaintiff discussed anxiety, marriage issues and difficulty sleeping, but primarily exhibited normal behavior, logical speech and thought processes, appropriate thought content, normal memory, normal cognition, and normal judgment. (TR 994–1093.) For example, in October of 2013, Plaintiff reported that she was "really good" and that when she took her medication she was "fine." (TR 1049.)

The RFC accounts for Plaintiff's anxiety condition by precluding work at a production rate pace, interaction with the public, tandem tasks with co-workers, and anything beyond occasional

10

and superficial interaction with co-workers and supervisors. (TR 515.) Substantial evidence supports the ALJ's decision not to impose the additional limitations proposed by Ms. Schmidt.

### b. Dr. Heth

In February of 2016, Dr. Charles Heth opined that Plaintiff's mental impairments render her incapable of even "low stress" jobs and would cause her to be off task 25% or more of the workday. (TR 1169–73.) The ALJ gave only little weight to Dr. Heth's proposed limitations, reasoning that, as an internist, Dr. Heth lacked "specialized training in the areas of psychology or psychiatry." (TR 519.) The ALJ further observed that Dr. Heth's treatment notes "consistently state that claimant presented with completely normal mental status examinations." Review of Dr. Heth's records confirms the latter observation. (TR 939–970.)

Plaintiff contends that the ALJ relies too heavily on the purportedly normal mental status examinations because "there appears to be no evidence he conducted mental status examinations and instead defer[ed] to Ms. Schmidt's treatment." (Docket no. 21, pp. 16–17.) Even if correct, however, this argument reinforces the ALJ's observation that Dr. Heth is not a psychiatrist and lacks a basis to assess Plaintiff's mental RFC.

Substantial evidence supports the ALJ's determination to give only little weight to Dr. Heth's mental RFC opinion.

### c. Dr. Qadir

In December of 2011, consultative examiner Dr. Fariha Qadir assessed Plaintiff's mental RFC and concluded that Plaintiff had marked limitations in her ability to interact appropriately with co-workers and her ability to respond appropriately to usual work situations and to changes in a routine work setting. (TR 349–350.)

The ALJ discredited this opinion because Dr. Qadir "only examined [Plaintiff] on one occasion in December 2011." (TR 519.) The ALJ further noted that Plaintiff responded appropriately to all objective testing performed by Dr. Qadir. (TR 347.) Based on these factors, substantial evidence supports the ALJ's decision not to credit Dr. Qadir's opinion.

### 4. *Plaintiff's Husband's Testimony*

Plaintiff asserts that the ALJ erred by "not provid[ing] meaningful analysis as to why Plaintiff's husband's testimony should be rejected." (Docket no. 21, pp. 24–25.)

In evaluating an opinion from a nonmedical source, the ALJ is permitted to consider the factors generally applicable to "opinion evidence," although not every factor for weighing opinion evidence will apply in every case. 20 CFR 404.1527(f). The ALJ should explain the weight given to opinions from these sources "when such opinions may have an effect on the outcome of the case." *Id.*

In discrediting Plaintiff's husband's testimony, the ALJ observed that he was "not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms" and that, as Plaintiff's husband, his testimony would "tend to be discolored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." (TR 520–21.)

The ALJ's analysis of Plaintiff's husband's testimony adheres to 20 CFR 404.1527 and is supported by substantial evidence.

### 5. *Plaintiff's Testimony*

Plaintiff contends that the ALJ improperly evaluated her testimony regarding her subjective symptoms. (Docket no. 21, pp. 25–26.) In support, Plaintiff marshals evidence to contradict the

12

ALJ's findings regarding: (1) Plaintiff's activities of daily living, (2) gaps in Plaintiff's treatment history, (3) improvement in Plaintiff's conditions, (4) medication increases. (*Id.*)

In considering Plaintiff's testimony regarding her own symptoms, the ALJ observed that Plaintiff's motivation, energy and concentration "improved and stabilized with medication" (as detailed in Ms. Schmidt's treatment notes). (TR 521.) The ALJ further noted that Plaintiff "remains independent with personal care, does dishes and laundry, grocery shops, and manages finances." (*Id.*) Regarding Plaintiff's social functioning, the ALJ observed Plaintiff "has a long history of irritability, paranoia, anxiety, depression, and difficulty handling stress," but emphasized that "there is no indication that she has ever been physically or verbally abusive to others, and, by her own admissions, medications, exercise, and coping mechanisms helped her deal with stress." (*Id.*) Based on this evidence, the ALJ concluded that "[a]lthough the evidence suggests that claimant's symptoms fluctuated, there is no indication that her symptomology ever persisted at a level severe enough to prevent her from working on a sustained and consistent basis." (TR 522.)

On review of the record, substantial evidence supports the ALJ's credibility determination. The contrasting evidence cited by Plaintiff is not a basis for remand. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## VI.    CONCLUSION

For the reasons set forth above, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 21) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 23) be **GRANTED**, and that the case dismissed in its entirety.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided

for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response will be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response will address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 2, 2019         s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 2, 2019         s/ Leanne Hosking
                               Case Manager