UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY A. KEILLOR,
    Plaintiff,

Case No. 18-10015

-vs-

HON. AVERN COHN

SOCIAL SECURITY COMMISSION,
    Defendants.
_____/

## **ORDER ADOPTING THE REPORT AND RECOMMENDATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### **I. INTRODUCTION**

**A.**

This is a social security case. Plaintiff, Tracy Ann Keillor, has appealed the Commissioner of Social Security's denial of her claim for benefits under the Social Security Act. (Doc. 1). The case was referred to a magistrate judge. (Doc. 4). Both parties submitted motions for summary judgment. (Doc. 21, 23). After reviewing the motions, pleadings, and ALJ decision, the magistrate judge issued a report and recommendation ("MJRR"), which states that the Plaintiff's motion for summary judgment should be denied, and Defendant's motion for summary judgment be granted. Plaintiff has filed objections to the MJRR and Defendant has responded. (Doc. 25, 26).

**B.**

For the reasons stated below, the MJRR is adopted in its entirety, Plaintiff's motion for summary judgment (Doc. 21) is DENIED, the Social Security Commissioner's motion for summary judgment (Doc. 23) is GRANTED, and this case is DISMISSED.

## II. BACKGROUND

### A. Procedural History

Plaintiff, Tracy Ann Keillor ("Keillor"), filed an application for Disability Insurance Benefits on January 5, 2011, alleging a disability onset date of December 28, 2010, which was later amended to an onset date of November 18, 2011. Keillor was ultimately denied benefits by an Administrative Law Judge ("ALJ") and was denied review by the Appeals Council. Keillor then appealed the ALJ decision to this Court. (Case no. 15-cv-11762).

During district court review of Keillor's first claim for benefits, she filed a second claim with the Social Security Commission, which alleged a disability onset date of December 1, 2013. The Court remanded Keillor's first case for a proper assessment of the opinion of consultative examiner, Dr. Fariha Qadir. After the remand, the Appeals Council ordered Keillor's two cases be consolidated.

After consolidation of Keillor's claims, an ALJ denied her claims for benefits. Keillor appealed the decision to the Appeals Council, which denied review. Keillor then commenced this action for district court review. After referral to a magistrate judge both parties filed cross motions for summary judgment. The magistrate judge issued a report and recommendation, which recommends that Keillor's motion be denied and the Social Security Commissioner's motion be granted. Now before the Court are Keillor's objections to the MJRR. (Doc. 25).

### B. ALJ Findings and Medical Evidence

Keillor alleges a disability onset date of November 18, 2011. Keillor says her disability is a culmination of bipolar disorder, depression, anxiety, panic attacks, mood swings, dysthymic disorder and posttraumatic stress disorder. The ALJ applied the five-

step process for determining whether Keillor has a disability within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a)-(f).

At step one, the ALJ determined that Keillor met the insurance-status requirement through December 31, 2015, and that she had not engaged in substantial gainful employment since November 18, 2011.

At step two, the ALJ found that Keillor's impairments were sufficiently severe. However, at step three, the ALJ evaluated Keillor's impairments and concluded that the impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appx. 1. Although Keillor failed to meet step three's requirements, the ALJ continued to apply the five-step analysis.

At step four, the ALJ accounted for Keillor's education and work experience as a retail store manager, automatic technician developer, fast food worker, and cashier. The ALJ found that Keillor's residual functional capacity included several limitations relevant to her mental impairments, including (1) not operating a motor vehicle, (2) responsible only for simple tasks and simple work decisions, (3) no production-rate paces, (4) no interaction with general public, (5) no engaging in tandem tasks with co-workers, and (6) only occasional and superficial interaction with co-workers and supervisors. A vocational expert testified that Keillor's residual functional capacity permitted her to secure gainful employment as a commercial or institutional cleaner, hand packager, collector, and addresser.

At step five, the ALJ found that there were a significant number of jobs in the national economy that Keillor could perform.

On appeal, the magistrate judge reviewed the ALJ decision and found that it was supported by substantial evidence.

### C. Keillor's Objections to the MJRR

Keillor makes four objections to the MJRR. (Doc. 25). First, Keillor says that the magistrate judge erred in finding that substantial evidence supported the ALJ's decision that her impairments meet or medically equal a listed disability. Keillor says that the state agency psychologist did not independently assess her impairments and impermissibly relied on the ALJ determination that was made in her first case before the Social Security Commission.

Second, Keillor says that the ALJ decision failed to show a logical connection between the evidence and the residual functional capacity finding. She says that the first ALJ's findings regarding her residual functional capacity were less restrictive than the second ALJ's findings; without any additional evidence that would attribute to a less restrictive finding. She says that because there was no new evidence submitted, and a less restrictive residual functional capacity finding was implemented, the ALJ decision lacked a logical connection between the evidence and the ALJ finding.

Third, Keillor says that the MJRR erred in its analysis regarding the opinion of Ms. Schmidt and the ALJ's treatment of Dr. Quadir's opinion. She says that a 2014 opinion of Ms. Schmidt was completely ignored by both the ALJ and the MJRR. She also says that the ALJ ignored a consultative examination by Dr. Quadir.

Fourth, Keillor says that the ALJ and MJRR erred in placing low evidentiary weight on the opinion evidence of her husband as it relates to the severity of her symptoms. She says her husband's testimony regarding the severity of her symptoms should have been afforded more weight.

# III. DISCUSSION

The Court finds that the MJRR is an accurate, well-reasoned review of the record. The MJRR is adopted in its entirety. The Court need only address Keillor's specific objections at this stage of the case and articulate reasons for why Keillor's objections are overruled.

## A. Objection #1

Keillor says that the magistrate judge erred in finding that substantial evidence supported the ALJ's decision that her impairments did not meet or medically equal a listed disability. Keillor says that the state agency psychologist, James Tripp, did not independently assess her impairments and impermissibly relied on the ALJ determination that was made in her first case before the Social Security Commission.

However, the MJRR was correct in finding that Dr. Tripp independently assessed the severity of Keillor's medical impairments. As the MJRR points out, Dr. Tripp adopted the previous ALJ's residual functional capacity finding because there was no new and material evidence in her file. As to the severity of her impairments, the MJRR points to evidence that Dr. Tripp conducted an independent analysis because his findings resulted in a reduced severity level in Keillor's difficulties in social functioning; from "*moderate*" to "*mild*." This is enough evidence to survive Keillor's challenge that Dr. Tripp blindly adopted a prior, outdated ALJ holding. Accordingly, Objection #1 is overruled.

## B. Objection #2

Keillor says that the ALJ decision fails to show a logical connection between the evidence and the residual functional capacity. The first ALJ decision stated that her work environment was to be essentially isolated from other workers. However, the

second ALJ decision states that she is permitted occasional, superficial interactions with co-workers. Keillor says that because there was no new evidence submitted to the second ALJ, and a less restrictive residual functional capacity finding was implemented, her second ALJ decision lacks a logical connection between the evidence and the residual functional capacity finding.

However, relating back to the opinion of Dr. Tripp, the second ALJ decision imposed a less restrictive residual functional capacity because her social functioning difficulties were reduced from *moderate* to *mild*. Thus, there is a logical connection between the evidence and the second ALJ findings. Objection #2 is overruled.

### *C. Objection #3*

Keillor says that the MJRR erred in its analysis regarding the opinion of Ms. Schmidt, and the ALJ's treatment of Dr. Quadir's opinion. First, she says that a 2014 opinion of Ms. Schmidt was completely ignored by both the ALJ and the MJRR. However, the MJRR and ALJ conduct a full discussion regarding the credibility of Ms. Schmidt's opinion (Doc. 24, p. 9-11), and the MJRR concluded "substantial evidence supports the ALJ's decision not to impose the additional limitations proposed by Ms. Schmidt." Id. at 11. Moreover, Keillor submitted no evidence that the ALJ was not aware of Ms. Schmidt's 2014 decision. The existence of a 2014 opinion that was not explicitly referenced in the MJRR or ALJ is not error, especially considering the ALJ findings that "Ms. Schmidt is not an acceptable medical source." (Doc. 24, p. 10).

Second, Keillor says that the ALJ ignored a consultative examination by Dr. Qadir, which the MJRR found to be reasonable. However, the MJRR correctly notes that the ALJ discredited Dr. Qadir's opinion, and evaluated the objective testing

performed by Dr. Qadir.  Accordingly, it cannot be said that the ALJ ignored the opinion of Dr. Qadir.  Objection #3 is overruled.

### *Objection #4*

Keillor says that the ALJ and MJRR erred in placing low evidentiary weight on the opinion evidence of her husband as it relates to the severity of her symptoms.  She says her husband's testimony regarding the severity of her symptoms "was certainly relevant and warranted consideration." (Doc. 25, p. 8).

However, both the MJRR and the ALJ considered Keillor's husband's testimony.  The fact that the ALJ did not explicitly mention the factors administrative law judges are supposed to use when evaluating non-medical testimony does not mean that the ALJ did not implement such factors when rendering a credibility decision.  Moreover, the MJRR conducted an accurate discussion and review of the husband's testimony (Doc. 24, p.12), which is incorporated by reference into this section of the Court's discussion.  Accordingly, Objection #4 is overruled.

SO ORDERED

                                            s/Avern Cohn
                                             AVERN COHN
                                             UNITED STATES DISTRICT JUDGE

Dated:  3/5/2019
Detroit, Michigan